# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL BURGHARDT, | 1:17-cv-01433-AWI-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S CLAIMS AGAINST DEFENDANTS BORGES, RENTERIA, MONTOYA, OSUNA, GOMEZ, AND GONZALES BE DISMISSED FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED AS UNRELATED CLAIMS UNDER RULE 18(a), WITHOUT PREJUDICE TO FILING NEW CASES PERTAINING TO THE UNRELATED CLAIMS** |
| v. | |
| L. BORGES, et al., | |
| Defendants. | |
| | **(ECF No. 13.)** |
| | **OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS** |

## I.    BACKGROUND

Darryl Burghardt ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On October 25, 2017, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On July 27, 2018, the court screened the Complaint and issued an order dismissing the Complaint for violation of Rules 8 and 18(a) of the Federal Rules of Civil Procedure, with leave to amend.  (ECF No. 12.)  On August 29, 2018,

Plaintiff filed the First Amended Complaint, which is now before the court for screening. (ECF No. 13.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is currently incarcerated at Salinas Valley State Prison in Soledad, California. The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants

Correctional Officer (C/O) L. Borges, C/O J. Renteria, C/O J. Guerrero, K. Cribbs (Appeals Coordinator), D. Goree (CCII), Captain R. Broomfield, Sergeant F. Montoya, M. Sexton (Chief Deputy Warden), Gonzales (LVN), D. Osuna (LVN), Lieutenant (Lt.) A.V. Johnson, Sergeant T. Candia, Lt. A. Delacruz, J. C. Smith (Associate Warden), Sergeant D. B. Hernandez, C/O J. Gomez, Lt. J. E. Silva, A. Pacillas (CCII), Captain R. Pimentel (Appeals Examiner), C. Hammond (Appeals Examiner), and J. A. Zamora (Chief Appeals Coordinator). Plaintiff alleges as follows:

On August 13, 2013, after Plaintiff submitted prison appeals against some prison officials defendant D. Goree retaliated against Plaintiff in handling another of Plaintiff's appeals regarding lost property by rejecting it for inapplicable reasons and discarding documents Plaintiff had enclosed to support his claims. This was done to hinder Plaintiff in resolving his property claim.

On October 17, 2013, defendant K. Cribbs retaliated against Plaintiff because of appeals that Plaintiff had filed. He did this by discarding certain documents Plaintiff had provided in one of the appeals.

On October 20, 2013, at Plaintiff's cell, Plaintiff presented an institutional form to defendant L. Borges for him to process through the institutional mailing system. Borges threatened to use pepper spray on Plaintiff, made vulgar comments, and refused to process the mail in retaliation for Plaintiff filing grievances. Borges departed Plaintiff's cell. Moments after Plaintiff complained out loud about Borges refusing to process his mail, defendant J. Guerrero came quickly to Plaintiff's cell and asked Plaintiff if he had broken one of the windows on Plaintiff's cell door. Plaintiff knew that the window was already broken when Guerrero housed Plaintiff in the cell the day before. Plaintiff started to respond. Guerrero began to process Plaintiff's mail and then demanded that Plaintiff pay for the window. Plaintiff told Guerrero that he wasn't going to pay for the window because he didn't damage it. Guerrero stormed off unhappily.

On October 21, 2013, Plaintiff filed grievances about the broken window incident. On the same day, defendant A. Delacruz acted in concert with Guerrero and Borges in retaliation

against Plaintiff for one of Plaintiff's appeals by restricting Plaintiff's access to an important state utensil (a cup), resulting in Guerrero falsifying a Rules Violation Report (RVR) against Plaintiff. ///

On October 23, 2013, defendants Broomfield, Smith, Guerrero, Candia, Silva, and Delacruz conspired to silence the issue, retaliating against Plaintiff. Broomfield endorsed an RVR that Guerrero falsified against Plaintiff in retaliation for Plaintiff grieving misconduct by L. Borges. On the same date, defendant J. C. Smith retaliated against Plaintiff by endorsing the RVR falsified by Guerrero, in concert with Guerrero. Defendant J. E. Silva acted in concert with defendants Delacruz and Candia by classifying the falsified RVR against Plaintiff in retaliation against Plaintiff to cover up Borges's unlawful acts.

On October 25, 2013, defendant T. Candia reviewed the RVR falsified against Plaintiff by J. Guerrero and found it to be true in retaliation against Plaintiff for an administrative appeal. This was in an attempt to help Delacruz cover up Guerrero's wrongdoing and acting in concert with Delacruz, Guerrero, and Borges.

On October 26, 2013, Guerrero issued an RVR against Plaintiff out of retaliation to cover up Guerrero's conduct on October 20, 2019.

On November 4, 2013, defendants Borges and Renteria worked together to batter Plaintiff and assault him with pepper spray while they were escorting Plaintiff. Renteria falsified the incident report against Plaintiff to try and cover up the acts against Plaintiff and in retaliation for Plaintiff filing grievances. That same day, in the B-section shower cell, defendant F. Montoya refused to allow Plaintiff to properly decontaminate from the pepper spray. Montoya also refused to provide Plaintiff with medical treatment for his injuries. Defendant D. Osuna conducted a medical evaluation of Plaintiff's injuries. Osuna acted in concert with Borges, Renteria, and Montoya by refusing to treat Plaintiff, refusing to allow Plaintiff to fully decontaminate, refusing to refer Plaintiff for medical treatment, and refusing to document rather than falsify what Plaintiff told Osuna on a form 7362 Health Care Services Request about the incident. Sometime later, Plaintiff began to experience complications from the injuries, but Osuna continued to deny him adequate medical care. Plaintiff submitted a 7362 Health Care Services Request to Osuna, but

Osuna never processed or honored it. Defendant J. Gomez retaliated against Plaintiff by falsifying part of an incident report against Plaintiff to assist Borges and Renteria to cover up their attack on Plaintiff, for Plaintiff engaging in protected conduct. Gomez procrastinated in providing Plaintiff with adequate health care for the injuries Plaintiff sustained in the attack, thus inflicting more pain upon Plaintiff for requiring medical attention. Gomez had Plaintiff placed under a regular food tray restriction (paper tray status).

On November 5, 2013, defendant Broomfield reviewed and approved an RVR which Borges falsified against Plaintiff to cover up Borges and Renteria assaulting Plaintiff, other officials' conspiracy to silence the issue, deprive Plaintiff of adequate medical care and further punish him. Broomfield retaliated by falsifying a report he submitted for one of Plaintiff's grievances and approving another report falsified by other officials in order to deny Plaintiff's copy request for his legal documents. Plaintiff explained to defendant Gonzales that Osuna deprived Plaintiff of adequate medical treatment and a chance to decontaminate from pepper spray since the day before. Plaintiff showed Gonzales the injuries he sustained in the attack and submitted a form 7362 Health Care Services Request to Gonzales, but she [Gonzales] refused to treat Plaintiff, have Plaintiff treated, have Plaintiff's 7362 form processed, acting in concert with D. Osuna against Plaintiff. Defendant J. C. Smith endorsed an RVR that Borges falsified against Plaintiff to cover up Borges and Renteria assaulting Plaintiff, in concert with Delacruz and Borges.

On November 9, 2013, Borges issued an RVR against Plaintiff as a cover-up, to justify Borges's encounter with Plaintiff, and Delacruz and Montoya began to conspire to cover up Borges's attack.

On November 11, 2013, Plaintiff complained in a grievance about defendant Bloomfield. Between November 24 and December 3, 2013, Broomfield approved a report against Plaintiff falsified by defendant D. B. Hernandez in order to deny another of Plaintiff's appeals.

On November 24, 2013, defendant D. B. Hernandez interviewed Plaintiff about Plaintiff's appeal against defendant Borges. Sometime later, Hernandez retaliated against Plaintiff in concert with Borges by refusing to conduct a thorough investigation on Plaintiff's behalf or

evaluate evidence Plaintiff provided so Hernandez could deny the appeal in a way that appeared justified.

///

On November 26, 2013, Plaintiff filed a grievance concerning the November 4, 2013 incident. Defendant K. Cribbs retaliated against Plaintiff by forging Plaintiff's name, or working with D. Goree and/or A. Pacillas to forge Plaintiff's name, on a cover sheet to Plaintiff's 602 appeal against Borges, Renteria, and other officials, to cause the appeal to be cancelled. Plaintiff submitted an appeal complaining about Goree's acts. That same day, Plaintiff submitted a grievance against Montoya for his acts on November 4, 2013. Plaintiff also submitted a grievance against Gonzales for refusing him medical care on November 5, 2013. Plaintiff also submitted a grievance against Osuna for inadequate medical care. Plaintiff also submitted a grievance against J. Gomez for placing Plaintiff on paper tray status.

On November 30, 2013, defendant A. V. Johnson acted as Senior Hearing Officer at a hearing against Plaintiff on an RVR falsified by Guerrero. Guerrero testified against Plaintiff. Johnson acted with Guerrero for Borges by refusing to let Plaintiff's favorable evidence be presented, and admitted the RVR record so Johnson could render a conviction that appeared justified.

On December 3, 2013, Plaintiff filed an appeal complaining about K. Cribbs's acts on October 13, 2013.

On December 5, 2013, Plaintiff complained about defendant Broomfield in another appeal. On the same day, Plaintiff complained in a grievance about the November 30, 2013 RVR hearing. Plaintiff also complained about T. Candia in an appeal about Candia's conduct on October 25, 2013. Plaintiff also complained about Delacruz in an appeal about Delacruz's conduct on October 25, 2013. Plaintiff also complained about J. C. Smith in an appeal regarding Smith's conduct on October 23, 2013. Plaintiff also complained about J. E. Silva in a grievance about Silva's conduct on October 23, 2013.

On December 11, 2013, Plaintiff submitted an appeal to the CDCR's Chief Inmate Appeals Branch. Defendant R. Pimentel examined the grievance regarding A. Pacillas and M.

Sexton approving of D. Goree deliberately misstating Plaintiff's grievance concerning Borges and Renteria attacking Plaintiff.

///

On December 16, 2013, defendant Johnson acted as Senior Hearing Officer at a hearing on an RVR against Plaintiff that was falsified by Borges. Johnson acted with Borges, Montoya, and Delacruz by refusing to let Plaintiff's favorable evidence to be presented and admitted the RVR's record so Johnson could render a conviction that appeared justified.

On December 17, 2013, Plaintiff submitted another appeal complaining about K. Cribbs's conduct on November 26, 2013. Plaintiff also submitted another appeal regarding D. Goree's conduct on November 26, 2013.

On December 28, 2013, defendant M. Sexton retaliated against Plaintiff by approving a false report by defendants Hernandez and Broomfield against Plaintiff concerning one of Plaintiff's grievances, acting in concert with defendants Hernandez and Broomfield to keep Plaintiff from seeking relief from the cruel and unusual conditions Plaintiff endured.

On January 7, 2014, defendant A. Pacillas interviewed Plaintiff about his grievance concerning defendants Cribbs and Goree interfering with a grievance.

On January 8, 2014, defendant Sexton acted in concert with A. Pacillas concerning another of Plaintiff's grievances by approving a report falsified by Pacillas. Pacillas retaliated against Plaintiff by deliberately denying Plaintiff's requests in a grievance, mostly based on a form with Plaintiff's forged signature. Forged either by Pacillas or by Cribbs, and/or Goree.

On January 9, 2014, acting in concert with defendant Broomfield, defendant Sexton approved another report falsified by Broomfield for another grievance to cover up malicious activity against Plaintiff by E. Bender [not a defendant].

On January 12, 2014, Plaintiff filed a grievance against defendant Sexton. Plaintiff also filed an appeal against defendant Johnson concerning Johnson's conduct at the November 28, 2013 hearing. Plaintiff also submitted an appeal to the Inmate Appeals Branch concerning defendants Guerrero's and Borges's retaliation against Plaintiff. The appeal was reviewed by J. A. Zamora on April 8, 2014.

On January 22, 2014, in concert with D. Overley [not a defendant], Sexton furthered his retaliation upon Plaintiff by approving a report falsified against Plaintiff by Overley.

///

On January 26, 2014, Plaintiff complained about defendant Sexton's behavior in a grievance. Plaintiff also complained about A. Pacillas in a grievance for his conduct on 1-7-14. Plaintiff also submitted another grievance to the Inmate Appeals Branch which was reviewed by defendant R. Pimentel. Acting in concert with other officials and in retaliation against Plaintiff, Pimentel refused to conduct an investigation and as a result, Plaintiff's grievances were denied by defendant J. A. Zamora.

On April 8, 2014, Plaintiff submitted a grievance to the Inmate Appeals Branch. Defendant C. Hammond examined the grievance and in concert with some prison officials refused to resolve the issues by failing to conduct an investigation or consider evidence favorable to Plaintiff. Defendant J. A. Zamora also examined one of Plaintiff's appeals at the Inmate Appeals Branch and retaliated against Plaintiff by refusing to resolve the issues in the grievance and affirming the unlawful lower-level decision, acting in concert with Hammond, Sexton, and Broomfield.

On April 15, April 24, and May 1, 2014, defendant Zamora again acted in concert with defendant Sexton concerning another grievance, similar to how Zamora acted on January 12, 2014.

Plaintiff alleges that he was injured financially, mentally, and emotionally. Plaintiff requests monetary damages (nominal, compensatory and punitive) and declaratory relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

## A.    Unrelated claims -- Violation of Rule 18(a)

A plaintiff may not proceed in one action on a myriad of unrelated claims against different defendants. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

In the court's prior screening order issued on July 27, 2018, the court advised Plaintiff that his Complaint contained unrelated claims in violation of Rule 18(a) of the Federal Rules of Civil Procedure. (ECF No. 12 at 6 ¶ A.) Plaintiff was informed that his claims are not related simply because they arise from retaliatory acts, or the processing of Plaintiff's appeals. (ECF No. 12 at 6:21-22.) Plaintiff was cautioned not to bring unrelated claims in the First Amended Complaint or the court would decide which claims shall proceed. (ECF No. 12 at 6:25-27.)

Plaintiff brings claims for excessive force, assault, and battery against defendants Borges and Renteria, and for inadequate medical care against defendants Montoya, Osuna, Gomez, and Gonzales. The court finds these claims to be related to each other as they all arise out of the same occurrence in that Plaintiff's need for medical care arose from the excessive force used against him. For this reason, the court finds that all of the claims against defendants Borges, Renteria, Montoya, Osuna, Gomez, and Gonzales are properly joined together in one suit. However, as discussed below, none of the claims against these Defendants are cognizable under § 1983 and they should be dismissed, with leave to amend.

Despite the court's admonishment, Plaintiff again brings unrelated claims in the First Amended Complaint. Plaintiff alleges claims against the remaining Defendants for retaliation, conspiracy, improper processing of appeals, improper RVR hearings, adverse conditions of confinement, cover-up and making false reports. The court finds these claims to be unrelated to the claims against defendants Borges, Renteria, Montoya, Osuna, Gomez, and Gonzales, in violation of Rule 18(a). These claims should be dismissed, without prejudice, giving Plaintiff the opportunity to file new cases on the unrelated claims if he so chooses.

The court now addresses Plaintiff's claims against defendants Borges, Renteria, Montoya, Osuna, Gomez, and Gonzales ("Defendants"). Plaintiff shall be granted leave to file a Second Amended Complaint to address the deficiencies found in these claims by the court.

///

///

### B. Interference with Outgoing Mail

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'" <u>Nordstrom v. Ryan</u>, 856 F. 3d 1265, 1272 (9th Cir. 2017) (quoting <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam)). However, a temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights. <u>See</u> <u>Crofton v. Roe</u>, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); <u>see</u> <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d. Cir. 2003); <u>Smith v. Maschner</u>, 899 F.2d 940, 944 (10th Cir. 1990), <u>affirmed</u> <u>in</u> <u>part</u> <u>by</u> <u>Parks v. Wren</u>, 651 Fed.Appx. 597, 2016 WL 3079709 (9th Cir. June 1, 2016) (affirming dismissal of plaintiff's access-to-courts claim); <u>Watkins v. Curry</u>, 2011 WL 5079532, at *4 (N.D. Cal. Oct. 25, 2011) (finding that an isolated incident of mail mishandling, without evidence that the delay was based on the content of the letter or that the one-year delay was purposeful, fails to show First Amendment violation).

Plaintiff alleges that on one occasion, defendant Borges refused to process Plaintiff's institutional mail, but soon afterward defendant Guerrero processed the mail. Plaintiff does not suggest that this delay was anything but an isolated incident and there is no evidence of improper motive. Therefore, Plaintiff fails to state a claim for interference with his outgoing institutional mail under the First Amendment.

### C. Conspiracy

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights

resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541). A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126). The mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted) ).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative. Though he uses phrases like "acted in concert," "conspired," "worked together," and "acted with," he does not provide any specific facts that show that any of the Defendants had an agreement to retaliate against him or otherwise violate his constitutional rights. There is absolutely no indication of any agreement between any of the Defendants. Therefore, Plaintiff fails to state a claim for conspiracy.

### D.    Cover-Up

Plaintiff alleges that Defendants conspired to cover up their acts against Plaintiff. To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his

right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.") Therefore, Plaintiff fails to state a claim against any of the Defendants for covering up their wrongdoing against Plaintiff.

### E.  Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be

retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

///

Here, Plaintiff alleges that Defendants retaliated against him because he filed prison grievances or engaged in other protected conduct by rejecting his appeals, falsifying reports, threatening him, and refusing to process his mail. While Plaintiff has shown that Defendants took adverse actions against him, he has not shown a sufficient connection between the adverse actions and his participation in the prison grievance process, or other conduct protected by the First Amendment. Plaintiff has not alleged *facts* demonstrating that Defendants acted against him *because* he filed grievances. Plaintiff has not established a causal connection between his protected conduct and the claimed adverse actions. The mere statement that Defendants "retaliated" against him or acted "in retaliation" is not sufficient to state a claim. Therefore, Plaintiff fails to state a claim for retaliation against any of the Defendants.

### F.     **Verbal Threats or Harassment**

Plaintiff alleges that defendant Borges threatened to use pepper spray on him and made vulgar comments against him. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, Plaintiff fails to state a claim against defendant Borges for verbally threatening or harassing him.

### G.     **Conditions of Confinement -- Eighth Amendment Claim**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of

pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-

45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

Plaintiff alleges that defendant Gomez placed him on regular food tray restriction (paper tray status). This act against Plaintiff, without more, is not an extreme deprivation and does not rise to the level of a violation of the Eighth Amendment. Plaintiff has not alleged facts showing that defendant Gomez knew about a substantial risk of serious harm to Plaintiff and acted against him while deliberately ignoring the risk, causing Plaintiff harm. Therefore, Plaintiff fails to state a claim based on defendant Gomez placing him on paper tray status.

## H.    Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, and property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty [or property] interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84. Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

### (1)    Prison Appeals Process

Some of Plaintiff's allegations against Defendants pertain to their review and handling of Plaintiff's inmate appeals. "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of

grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." <u>Azeez</u>, 568 F. Supp. at 10; <u>Greeno v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

///

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. <u>Buckley</u>, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." <u>Greeno v. Daley</u>, 414 F.3d 645, 656-57 (7th Cir. 2005) <u>accord</u> <u>George</u>, 507 F.3d at 609-10; <u>Reed v. McBride</u>, 178 F.3d 849, 851-52 (7th Cir. 1999); <u>Vance v. Peters</u>, 97 F.3d 987, 992-93 (7th Cir. 1996).; <u>Haney v. Htay</u>, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that Defendants failed to properly process Plaintiff's appeals fail to state a cognizable due process claim.

### (2) <u>False Reports</u>

Plaintiff claims that some of the Defendants wrote false disciplinary reports against him. This allegation, even if true, does not raise a constitutional claim because there is no due process right to be free from false charges. The falsification of a disciplinary report does not state a standalone constitutional claim. <u>Canovas v. California Dept. of Corrections</u>, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free

decision-making." <u>Jones v. Woodward</u>, *2015* WL 1014257, *2 (E.D. Cal. 2015) (citing <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1410 (8th Cir. 1994); <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff fails to state a due process claim for false information being reported against him.

///

## I. **Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." <u>Hudson</u>, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." <u>Id.</u> (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. <u>Id.</u> at 9; <u>see</u> <u>also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." <u>Id.</u> at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u> at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." <u>Id.</u> (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." <u>Id.</u>

Plaintiff alleges that defendants Borges and Renteria assaulted and battered him and used pepper spray against him while they were escorting him, causing injuries. Plaintiff's allegations are not yet sufficient to state a claim for use of excessive force. Plaintiff has not alleged facts explaining the circumstances of the escort, such as where and why it happened, how Plaintiff acted, the extent of force used, and Plaintiff's injuries to him were caused by the force, and how each of the named Defendants personally acted against Plaintiff to violate his rights. Therefore, Plaintiff fails to state a cognizable claim under § 1983 for use of excessive force.

**J.    Medical Claim - Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but

that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Id.</u> at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980), <u>citing Estelle</u>, 429 U.S. at 105-06. " [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin</u>, 974 F.2d 1050, <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>WMX Techs., Inc.</u>, 104 F.3d at 1136 (en banc) (internal quotations omitted)). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." <u>Farmer</u>, 511 U.S. at 837.

Plaintiff alleges that defendant Sergeant F. Montoya refused to allow him to properly decontaminate from pepper spray and also refused to provide Plaintiff with medical treatment

for his injuries.  Plaintiff also alleges that defendant D. Osuna (LVN) conducted a medical evaluation of Plaintiff's injuries but refused to allow Plaintiff to fully decontaminate, refused to refer Plaintiff for medical treatment, and refused to document rather than falsify what Plaintiff told him.  Sometime later, when Plaintiff experienced complications, defendant Osuna continued to deny him adequate medical care and never processed or honored Plaintiff's 7362 Health Care Services Request.  Plaintiff also alleges that defendant C/O J. Gomez procrastinated in providing Plaintiff with adequate health care for the injuries Plaintiff sustained in the attack, thus inflicting more pain upon Plaintiff.  Finally, Plaintiff alleges that defendant Gonzales (LVN) refused to treat Plaintiff, have Plaintiff treated, or have Plaintiff's 7362 form processed.

Plaintiff's allegations against these Defendants are vague and conclusory.  Plaintiff fails to allege *facts* showing that any of the Defendants knew Plaintiff was at serious risk of substantial harm to his health.  Plaintiff has not explained the extent of his injuries or how each named defendant personally acted in violation of Plaintiff's rights.  Plaintiff should provide more information about his symptoms before decontamination, what measures he was allowed to take to decontaminate, and why the decontamination was not sufficient.  Plaintiff should also explain how each of the defendants knew that Plaintiff needed medical care, and how they each personally acted against him, causing him injury.

Accordingly, the court finds that Plaintiff fails to state a cognizable Eighth Amendment medical claim against any of the Defendants.

**K.**     **State Law Claims**

Plaintiff claims that defendants C/O Borges and C/O Renteria assaulted and battered him.  Assault and battery are state law claims.  Plaintiff is informed that violation of state tort law or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law

claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the court fails to find any cognizable federal claims in the First Amended Complaint. Therefore, Plaintiff's claims for assault and battery fail.

Equally important here, Plaintiff has not demonstrated that he complied with the claim presentation requirements of California's Government Claim Act. The Government Claims Act requires that a tort claim for damages against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the board") no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 910, 911.2, 950.2, 950.6. The board has forty-five days to act on a claim, or an application for leave to file a late claim; and absent an extension by agreement, if the board fails to act within forty-five days, the claim is deemed rejected, or the application is deemed denied, on the last day of the prescribed period. Cal. Gov't Code §§ 911.6, 912.4. Presentation of a written claim and action on or rejection of the claim by the board are conditions precedent to suit. Cal. Gov't Code §§ 945.4, 950.6; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239, 90 P.3d 116, 13 Cal.Rptr.3d 534 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Suit must be commenced not later than six months after the date the written notice is deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); Clarke v. Upton, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010); Baines Pickwick Ltd. v. City of Los Angeles, 72 Cal.App.4th 298, 303 (Cal. Ct. App. 1999), and if written notice is not given, suit must be commenced within two years from accrual, Cal. Gov't Code § 945.6; Baines Pickwick Ltd., 72 Cal.App.4th at 303.

Plaintiff has not indicated that he presented a written claim to the state VCGCB within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold, 67 F.3d at 1477. Therefore, Plaintiff fails to state any cognizable state law claims. Plaintiff shall be granted leave to amend to cure the deficiencies in his state law claims found by the court.

**L.      Request for Declaratory Relief**

Besides monetary damages, Plaintiff requests declaratory relief. Such a request is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]") Therefore, Plaintiff is not entitled to declaratory relief in this case.

### M. No Monetary Damages Without Physical Injury

Plaintiff requests monetary damages for mental and emotional distress. Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver, 289 F.3d at 627 (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims under § 1983 against defendants Borges, Renteria, Montoya, Osuna, Gomez, or Gonzales in the First Amended Complaint; and Plaintiff's claims against the remaining defendants are unrelated claims in violation of Rule 18(a) of the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's claims against defendants C/O Borges, C/O Renteria, Sergeant F. Montoya, D. Osuna (LVN), C/O J. Gomez, and Gonzales (LVN) be dismissed from this action for failure to state a claim under § 1983, with leave to amend;

2.      Plaintiff's claims against the remaining defendants for retaliation, conspiracy, improper processing of appeals, improper RVR hearings, verbal threats and harassment, due process violations, adverse conditions of confinement, interference with mail, cover-up, and making false reports, be dismissed from this action as unrelated claims, in violation of Rule 18(a), without prejudice to filing new cases if Plaintiff decides to bring these unrelated claims;

3.      Defendants C/O J. Guerrero, K. Cribbs (Appeals Coordinator), D. Goree (CCII), Captain R. Broomfield, Lt. A.V. Johnson, Sergeant T. Candia, Lt. A. Delacruz, J. C. Smith (Associate Warden), Sergeant D. B. Hernandez, Lt. J. E. Silva, A. Pacillas (CCII), M. Sexton (Chief Deputy Warden), Captain R. Pimentel (Appeals Examiner), C. Hammond (Appeals Examiner), and J. A. Zamora (Chief Appeals Coordinator) be dismissed from this case based on Plaintiff's violation of Rule 18(a), without prejudice to filing new cases against them; and

4.      This case be referred back to the Magistrate Judge for further proceedings.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __July 18, 2019__          _____ **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE